# In the United States Court of Federal Claims

No. 12-541L
(Filed: January 15, 2014)

```
* * * * * * * * * * * * * * * * *
                                 *
MINISTERIO ROCA SOLIDA,          *
                                 *
                Plaintiff,       *      Taking of Property Without
                                 *      Just Compensation; Motion to
        v.                       *      Dismiss for Lack of Subject
                                 *      Matter Jurisdiction;
                                 *      RCFC 12(b)(1); 28 U.S.C. § 1500
THE UNITED STATES OF AMERICA,    *
                                 *
                Defendant.       *
                                 *
* * * * * * * * * * * * * * * * *
```

## OPINION AND ORDER

*Joseph Francis Becker*, NPRI Center for Justice and Constitutional Litigation, Reno, NV, for plaintiff.

*Gregory Daniel Page*, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

**KAPLAN, Judge.**

This suit alleges a taking of property without just compensation in violation of the Fifth Amendment. Pending before the Court is the government's motion to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims for lack of subject matter jurisdiction. The government argues that—pursuant to 28 U.S.C. § 1500—this Court lacks jurisdiction under the Tucker Act because at the time the complaint was filed here, plaintiff had already filed a complaint against the United States in another court based on substantially the same operative facts. For the reasons that follow, the Court grants the government's motion and dismisses the case without prejudice.

### I. BACKGROUND

Plaintiff Ministerio Roca Solida ("Solid Rock Ministry") is a Christian church in Nevada founded in 2006 by Pastor Victor Fuentes, a Cuban refugee. Compl. ¶ 3; Pl.'s Opp'n to Def.'s Mot. To Dismiss 3. In November, 2006, with donations from parishioners, Solid Rock Ministry purchased a forty-acre parcel of land in Nye County, Nevada for $500,000. Compl. ¶ 5. Solid

Rock Ministry built a church camp on the property where attendees can retreat, meditate, and enjoy nature. Id. ¶¶ 5-6. Flowing through the camp was a desert stream, which Solid Rock Ministry used for baptisms. Id. ¶ 6. The stream also fed a pond that attendees of the camp used for recreation. Id. When Solid Rock Ministry purchased the property, it also purchased water rights to this stream. Id.

Although the camp is Solid Rock Ministry's property, it is situated within the boundaries of the Ash Meadows National Wildlife Refuge. Id. ¶ 5. A unit of the National Wildlife Refuge System, Ash Meadows is managed by the United States Fish and Wildlife Service ("FWS"). Ash Meadows National Wildlife Refuge, U.S. Fish and Wildlife Service (Dec. 11, 2013), http://www.fws.gov/refuge/ash_meadows/. As part of its wildlife management mandate, FWS had undertaken a water diversion project on Ash Meadows land. Compl. ¶ 7. FWS finished work on this project in August 2010. Id.

Solid Rock Ministry alleges that FWS's water diversion project routed Solid Rock Ministry's water "completely around the borders of the church's forty acre parcel" and thus "prevented Solid Rock Ministry's water from entering the church property." Id. Solid Rock Ministry further alleges that FWS executed the project negligently, causing $86,639 in damage to the camp from flooding that occurred on December 23, 2010, the first day of significant rainfall after the diversion. Id. ¶ 9.

To redress its injuries, Solid Rock Ministry filed suit against FWS and the Ash Meadows Wildlife Refuge Manager in the United States District Court for the District of Nevada on August 22, 2012. Ministerio Roca Solida v. United States, No. 2:12-cv-1488-RCJ-VCF (D. Nev. filed Aug. 22, 2012). In that suit, which is still pending, Solid Rock Ministry seeks declaratory and injunctive relief for alleged violations of the due process clause and the First Amendment's free exercise clause arising out of the water diversion project. It is also seeking damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), and compensation under the Fifth Amendment Takings Clause. See Compl. ¶¶ 19-33.

On August 24, 2012, two days after Solid Rock Ministry filed its suit in the district court, it filed the present case here. The present complaint relates to the same water diversion project that forms the basis for Solid Rock Ministry's complaint in the District of Nevada. In its complaint, Solid Rock Ministry requests that this Court "stay action in this proceeding pending resolution of the relief sought in the United States District Court for the District of Nevada" and that, depending on the outcome of its other suit, this Court "declare that Defendants' water diversion project resulted in a taking of Plaintiff's property rights in water and land and award money damages plus interest for said takings, be they temporary in nature or otherwise." Compl. ¶ 17. Solid Rock Ministry filed its suit here to preserve its right to recover damages in excess of $10,000 in this Court against the potential future bar of the Tucker Act's six-year statute of limitations. See Pl.'s Opp'n to Def.'s Mot. to Dismiss 3.

## II. DISCUSSION

Whether this Court has jurisdiction to decide a case is a threshold matter, and, if no jurisdiction exists, the Court must order dismissal without proceeding further. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). In deciding a motion to dismiss for lack

2

of subject matter jurisdiction, the court accepts as true all undisputed facts in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Id.

In filing its takings claims in this court, Solid Rock Ministry invokes this court's jurisdiction under the Tucker Act, which authorizes the Court of Federal Claims to render judgment upon "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Claims for damages under the Takings Clause of the Fifth Amendment are within this Court's Tucker Act jurisdiction. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1309 (Fed. Cir. 2008). Indeed, as noted above, the Court of Federal Claims possesses exclusive jurisdiction over such claims when damages exceed $10,000. § 1346(a)(2).

The Court of Federal Claims' Tucker Act jurisdiction is, however, limited by 28 U.S.C. § 1500. That statute provides that the Court of Federal Claims lacks subject matter jurisdiction "of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States . . . ." Id. As the court of appeals has observed, two inquiries are required to determine the applicability of the jurisdictional bar contained in § 1500: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." Brandt v. United States, 710 F.3d 1369, 1374 (Fed Cir. 2013); see also Trusted Integration, 659 F.3d at 1163–64 (citing United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1727 (2011)).

In this case, the answer to the first inquiry is undisputed: there is currently pending in the District of Nevada an earlier-filed suit by the plaintiff against the United States. The sole issue before the Court, therefore, is whether the present suit contains claims that are "for or in respect to" the claims in the complaint the plaintiff filed in the district court.

The Supreme Court has held that the claims asserted in an earlier action are "for or in respect to" a claim later filed in the Court of Federal Claims if the pending suit in district court is "based on substantially the same operative facts." Tohono, 131 S. Ct. at 1731. The jurisdictional bar applies, the Supreme Court held, even if no overlap exists between the relief sought in this Court and the relief sought in the district court. Id. See also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 (Fed. Cir. 2012) (applying Tohono).

Solid Rock Ministry's action in the district court and the present case meet the standard set forth in Tohono. The claims in both actions arise from Solid Rock Ministry's ownership of the same parcel of land and water and its alleged injuries as a result of the same FWS water diversion project. In fact, the complaints in the two cases describe the underlying government actions in virtually identical language. The complaints "at best, repackaged the same conduct into . . . different theories, and at worst, alleged the same takings claim." Cent. Pines, 697 F.3d at 1365.

3

Solid Rock Ministry appears to concede that its claims in the District of Nevada for injunctive relief and its claims in this court for monetary relief involve substantially the same operative facts. See, e.g., Pl.'s Opp'n to Def.'s Mot. to Dismiss 6 (referring to its claims as "arising from the same nucleus of operative fact"). But despite this concession, Solid Rock Ministry argues that, based upon the history and the original purpose of § 1500, Congress did not intend for the statute to bar suits that seek relief different from and additional to that sought in the district court. See Pl.'s Opp'n to Def.'s Mot. to Dismiss 9. It notes that § 1500 has origins in an 1868 statute designed to prevent "cotton claimants" from filing duplicative lawsuits against government officials that would have effectively resulted in double payments on a single claim. Pl.'s Opp'n to Def.'s Mot. to Dismiss 8; Keene Corp. v. United States, 508 U.S. 200, 206 (1993). It argues that its lawsuits are not similarly "duplicative" because it is not seeking to be made whole twice; rather, it seeks to secure injunctive relief and money damages in the district court while preserving its right to seek a monetary remedy here for the taking of its property, should the damages for such taking ultimately exceed $10,000. See Pl.'s Opp'n to Def.'s Mot. to Dismiss 9 ("Solid Rock is not trying to get paid twice for the same loss . . . ."). Solid Rock Ministry argues moreover that the result of reading § 1500 to preclude this Court's jurisdiction—the possible loss of a cause of action due to the expiration of the statute of limitations—is unfair and may ultimately preclude it from vindicating its Fifth Amendment rights to just compensation.

Solid Rock Ministry's arguments cannot be reconciled with binding precedent from the Supreme Court and the Federal Circuit. First, the Tohono Court was fully aware of the history of § 1500 that Solid Rock describes. See Tohono, 131 S. Ct. at 1728. The Court placed its reliance, however, on what it considered the plain statutory language when it ruled that § 1500 bars claims "based on facts alone," regardless of the relief sought or the underlying legal theories. Tohono, 131 S. Ct. at 1728; Trusted Integration, 659 F.3d at 1164 (citing Keene Corp., 508 U.S. at 212, and noting that whether the legal theories underlying the asserted claims in each action are the same or different is irrelevant to whether the claims asserted in an earlier action are "for or in respect to" the claims later filed in this Court). In short, the only pertinent question in deciding § 1500's application is whether there is substantial factual overlap between the claims; the forms of relief sought in the parallel actions are not relevant. See, e.g., Pelligrini v. United States, 103 Fed. Cl. 47, 51-52 (2012) (ordering dismissal in a case very similar to Solid Rock Ministry's in which the plaintiff asserted claims under the FTCA in district court and under the Fifth Amendment Takings Clause in the Court of Federal Claims, where both suits involved the same underlying facts ). See also Kingman Reef Atoll Invs., L.L.C. v. United States, 103 Fed. Cl. 660, 689 (2012) (dismissing a takings claim when a quiet title action with substantially the same underlying facts was pending in district court); U.S. Home Corp. v. United States, 108 Fed. Cl. 191, 197-98 (2012) (dismissing a claim seeking damages for a breach of deed covenants when a claim seeking a declaratory judgment under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 with the same operative facts was pending in district court).[1]

---

[1] Although Tohono holds that § 1500's jurisdictional bar may apply even absent any overlap between the relief sought in the district court and the relief sought in the CFC, it bears noting that in this case—contrary to Solid Rock Ministry's arguments—there is, in fact, overlap between the relief sought in the two forums. Thus, both here and in the district court Solid Rock Ministry

Nor is there any merit to Solid Rock Ministry's argument that <u>Tohono</u> is inapposite because the claims here, unlike the claims in <u>Tohono</u>, are subject to a statute of limitations, whose expiration could deprive Solid Rock Ministry of a damages remedy for the alleged "taking" of its property.  <u>See</u> Pl.'s Opp'n to Def.'s Mot. to Dismiss 10.  Indeed, the Supreme Court in <u>Tohono</u> expressly noted that even if the plaintiff's claims were subject to bar by a statute of limitations, the result would be the same, observing that "[e]ven were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning . . . . This Court enjoys no liberty to add an exception . . . to remove apparent hardship."  <u>Tohono</u>, 131 S. Ct. at 1731 (internal quotation marks omitted).

Solid Rock Ministry acknowledges the Supreme Court's refusal to carve out a hardship exception, but it argues that the statements to that effect in <u>Tohono</u> constitute "dicta" that need not be followed.  Pl.'s Opp'n to Def.'s Mot. to Dismiss 10.  But while the discussion of "hardship" arising out of the hypothetical expiration of a statute of limitations may be characterized as "dicta" in the context of the facts in <u>Tohono</u>, the <u>Tohono</u> Court's direction that § 1500 "leaves no room to account for . . . hardship" has been held "clear" by the Federal Circuit.  <u>Cent. Pines</u>, 697 F.3d at 1367 n. 6; <u>see also</u> <u>Goodeagle v. United States</u>, 105 Fed. Cl. 164, 174 (2012) (relying on the Supreme Court's statement on hardship in rejecting plaintiffs' request for an exception to § 1500); <u>U.S. Home Corp.</u>, 108 Fed. Cl. at 200 n. 6 (quoting <u>Cent. Pines</u>, 697 F.3d at 1367 n. 6, for the proposition that "§ 1500 leaves no room to account for hardship").  Therefore, the fact that the plaintiff here is subject to a statute of limitations, while the plaintiff in <u>Tohono</u> was not, is not material to the disposition of the jurisdictional issue.  Binding precedent dictates that there may be no consideration of hardship in determining the applicability of the jurisdictional bar.

The rest of Solid Rock Ministry's arguments amount to similar requests that this Court depart from binding Supreme Court or Circuit precedent.  For example, Solid Rock Ministry cites Justice Sotomayor's concurrence in <u>Tohono</u> to support an argument that dismissing this suit "runs contrary to" judicial efficiency and that a stay of proceedings would better serve that end.  <u>See</u> Pl.'s Opp'n to Def.'s Mot. to Dismiss 11 (citing 131 S. Ct. at 1737 (Sotomayor, J., concurring)).  But Justice Sotomayor made this observation in the context of her criticism of the majority's opinion in <u>Tohono</u>; the gist of the majority's opinion is that such policy considerations, like considerations of hardship, are not to be considered in determining this Court's jurisdiction (or lack thereof) under § 1500.

Similarly, Solid Rock Ministry cites <u>Loveladies Harbor, Inc. v. United States</u>, 27 F.3d 1545 (Fed. Cir. 1994) (en banc), for the proposition that "a litigant may file a suit challenging the validity of governmental regulatory activity [in district court] concurrently with a takings claim [in the Court of Federal Claims] arising from the same set of facts."  Pl.'s Opp'n to Def.'s Mot.

---

seeks money damages as compensation for a Fifth Amendment taking arising out of the same operative facts.  Therefore, even under the narrower interpretation of § 1500 that governed prior to <u>Tohono</u>, this Court would lack jurisdiction to decide Solid Rock Ministry's takings claim.  <u>See</u> <u>Keene Corp.</u>, 508 U.S. at 214 (holding that § 1500 requires dismissal if "the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested" and that the plaintiff's takings claim in district court and its takings claim in the Court of Federal Claims met this standard).

5

to Dismiss 13.  Loveladies Harbor, however, does not assist the plaintiff's case because it too conflicts with the more recent Supreme Court and Federal Circuit precedent as described above.

To be sure, the Supreme Court in Tohono did not expressly overrule Loveladies Harbor. But cf. Tohono, 131 S. Ct. at 1734 (Sotomayor, J., concurring), 1739 (Ginsburg, J., dissenting) (citing Loveladies Harbor as an earlier framework that the majority in Tohono rejects).  The Federal Circuit in Trusted Integration, however, clearly indicated that Loveladies Harbor no longer controls to the extent that it places its focus on whether the relief sought in the two actions is different.  Trusted Integration, 659 F.3d at 1164, 1166 n. 2 (juxtaposing Loveladies Harbor, in which the Court said that the claim pending in another court "must arise from the same operative facts, and must seek the same relief," and Tohono, which "clarified" that the claim must arise from the same operative facts "regardless of the relief sought in each suit").  For these reasons, several judges on this court have concluded (correctly) that Loveladies Harbor has effectively been overruled.  See, e.g., Pellegrini, 103 Fed. Cl. at 51 (citing Loveladies Harbor as "overruled . . . by Tohono"); U.S. Home Corp., 108 Fed. Cl. at 194 (stating that Loveladies Harbor was "rejected by the Supreme Court in Tohono").

## CONCLUSION

On the basis of the foregoing discussion, this Court's exercise of jurisdiction is precluded by 28 U.S.C. § 1500.  Plaintiff's complaint, accordingly, is dismissed without prejudice, and plaintiff's request for a stay is denied as moot.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

                                                         s/Elaine D. Kaplan  
                                                         ELAINE D. KAPLAN  
                                                         Judge, U.S. Court of Federal Claims